## Commonwealth *v.* Wilson, Appellant.

Submitted December 11, 1969.  Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and CERCONE, JJ.

*Harry L. Green, Jr.,* Assistant Public Defender, for
appellant.

*Richard A. Devlin* and *Stewart J. Greenleaf,* Assist-
ant District Attorneys, *Parker H. Wilson,* First Assist-
ant District Attorney, and *Milton O. Moss,* District At-
torney, for Commonwealth, appellee.

OPINION PER CURIAM, March 19, 1970:
Order affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:
Appellant in the instant case was tried on a charge
of arson of his former mother-in-law's home.

In my opinion, a new trial should be granted on
three grounds.

### I

Introduction of Evidence of Other Crimes

During the trial, the Commonwealth presented as
its witnesses appellant's former mother-in-law and his
former wife.

During the mother-in-law's testimony, the following exchange occurred: "Q. How had you been getting along with him [appellant] prior to that? A. Well, not too good. Q. What do you mean by that? A. Well, he was always writing checks out and did everything bad he could. He was in jail, in and out. Q. Well, I am concerned primarily, Mrs. Kriebel. . . . [Appellant's counsel]: If your Honor please, I ask for the withdrawal of a juror. THE COURT: Motion refused."

During the wife's testimony the following exchange occurred: "Q. . . . After that, up to, say, January, 1960, how were you getting along with Mr. Wilson? A. Well, he was in jail most all that time. [Appellant's counsel]: Again I ask for the withdrawal of a juror, your Honor. And no amount of instructions to a jury is going to cure this."

Most recently, in *Commonwealth v. Bruno,* 215 Pa. Superior Ct. 407, 258 A. 2d 666 (1969), we reiterated Judge SPAULDING's statement in *Commonwealth v. Trowery,* 211 Pa. Superior Ct. 171, 235 A. 2d 117 (1967) that: "It is almost too axiomatic to repeat the well-established common law rule that, in a criminal prosecution, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. [Citing cases.] The purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." Id. at 173-174.

This case should be governed by that statement. Here, on two separate occasions, reference was made to appellant's being in jail on numerous occasions. Such testimony had no relevance to the case whatsoever. The fact that two references were made indicates that the Commonwealth was not sufficiently careful in preparing its witnesses. Moreover, there is much to suspect that the wife, after hearing the statement made by her mother and the resultant objection, deliberately and intentionally stated it again for emphasis. This statement could only serve to prejudice him in the minds of the jurors as is more fully set out in Judge SPAULDING'S opinion. For the reasons stated therein, I believe that a new trial is appropriate.

## II

### Introduction of Evidence Concerning Another Fire

On the day of the fire, a barn owned by the grandfather of appellant's former wife also burned. The Commonwealth introduced nine witnesses whose testimony indicated that appellant was observed near that fire. The Commonwealth seeks to justify the introduction of this evidence by stating the following in its brief:

"The barn in Hereford, which was burned on January 18, 1960, was owned by the grandfather of defendant's former wife. The defendant's former wife had testified that the defendant thought her grandfather had paid for her divorce and threatened to 'get even'. Obviously, under these circumstances, testimony concerning the Hereford barn fire was admissible as an exception to the general rule. In Commonwealth v. Wable, 382 Pa. 80 (1955) the Court stated:

" 'But it is also true that sometimes there exist the "special circumstances" which operate as exceptions to

the general rule, and bring the case within the equally well established principle that evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. A veritable multitude of authorities in our appellate courts enunciate, albeit in varying language, this familiar principle.' "

*Wable,* however, is totally inapplicable in the instant case. There was no evidence that the fire at the grandfather's barn was caused by arson, nor is there any reference in the testimony of any of the witnesses that defendant had any hand in starting that fire or was ever accused of it. At most, it shows his presence in the vicinity at the time of the fire. Thus, the statement in *Wable* that proof of one crime tends to prove who committed the other is irrelevant here since there is nothing to suggest that the fire at the grandfather's barn involved a crime at all.

This testimony was undoubtedly most damaging to appellant, however, for it supplied a crucial element missing in the instant case. Here, there is totally lacking any evidence to suggest that appellant was in the vicinity of his former mother-in-law's home when the fire was started. The introduction of the testimony concerning the unrelated fire may be seen as an attempt to confuse the jury by implying that since he had been present at the second fire, he may well have been present at the first. Thus, the Commonwealth heaped innuendo upon innuendo without basis or justification.

In my opinion, the testimony of nine other witnesses relating to appellant's presence at another fire where no criminal conduct was shown was irrelevant and may well have prejudiced and confused the jury. Certainly, no motive can be shown from his mere presence at that fire, and its prejudicial effect clearly outweighed its probative value.

### III

#### Allowing a Police Officer To Testify as to Appellant's Sanity

Defense counsel introduced the testimony of a psychiatrist which raised doubt as to appellant's sanity. In an apparent attempt to rebut this testimony, the Commonwealth called in rebuttal a police officer, Sgt. Mays of the Pennsylvania State Police, who was asked: "Q. Now, from all that you observed and in your exposure with the defendant, could you give an opinion as to his ability to know the nature and consequences of his actions?" After objection, overruled by the court, the officer replied, "A. There was nothing to indicate this at this time."

Thereafter, when defense counsel attempted to negate any expertise in psychiatry by the officer, the court explicitly stated that there was no contention that the officer had any education or experience in the field of psychiatry or psychology, and the court summarized the officer's testimony in the presence of the jury as follows: "THE COURT: Again, he is not concluding that the defendant is of sound mind, he is simply saying as a layman and observing him, 'I saw nothing which indicated he was of unsound mind.'"

It is well settled that a lay witness, without expertise, cannot render an opinion as to the mental condition of an accused. While a nonexpert witness may

properly be qualified to state that a particular person neither did nor said anything out of the ordinary, he should not be permitted as he was here, to express an opinion as to an individual's ability to appreciate and understand the consequences of his actions.

The introduction of this testimony constituted an improper method of rebutting appellant's medical testimony.

For the reasons set forth herein, therefore, I would vacate the judgment of sentence and grant a new trial.

SPAULDING, J., joins in this dissenting opinion.

MONTGOMERY, J., joins in Part I of this dissenting opinion.